Good morning, Your Honors. David B. Owens here for the estate of Ian Simmers. On behalf of Donna Berube, Mr. Simmers' mother, I'd like to reserve five minutes for rebuttal. Once o'clock, we'll try to help you. Thank you, Judge. Ian Simmers is innocent of and had nothing to do with the murder of Rodney Gokenhauer. Simmers could not have committed the crime. He was home the Friday night it occurred. The next day, Simmers, just 16, met up with a friend, John Wyatt, just 14. This was Saturday evening, after Gokenhauer had been killed and after his body had been found. The boys were arrested a few days later. They had not heard about the murder. When questioned, Simmers repeatedly told police he did not want to talk to them about the murder and was trying to sleep. Rather than give a 16-year-old rest or concern, officers insisted on questioning him. Eventually, Simmers relented. Simmers spoke with the police about the murder because he said he was, quote, mentally exhausted, and rightly concluded they were not going to leave him alone unless and until he spoke with them. Counsel, can I ask you this? I appreciate the interesting facts here. But your client served a long time in prison because he was convicted of doing this. Later on, he got out. The county decided that there was old evidence. They really wouldn't want to go through this again. He has now brought suit. He himself is dead, I guess, in an automobile or motorcycle accident. So we've got a lot of old evidence. You're dealing with basically who said what, what stands, what doesn't stand. I'd like to know, even if we agree that there was a dispute of material fact as to whether McSwain fabricated the Wyatt interview, the district court never passed on the causation element of the fabrication claim. You seem to argue that Caldwell makes clear that there is causation. I haven't heard the defendant's response, but I'd like to get your argument. Why, under Caldwell, does the very fact that causation is an element of the complaint sufficient? Yes, Your Honor. So the issue is one about proximate causation. And the question about proximate cause is about foreseeability. And that's just the general landscape. Then, more specifically, the question is whether or not fabricated evidence harmed the plaintiff, the criminal defendant, in some way. Do you have any case law that says, other than your claim Caldwell, that if that is listed as an element of the complaint, that that is sufficient? Do you have any case that says that? I don't think that that's our claim, and so let me try to clarify. I apologize. So the question is whether or not the fabricated evidence could have impacted the criminal proceedings in some manner. Here, Mr. McSwain's report was written. It was part of the probable cause determination that this is what happened with Wyatt and that all of these things occurred. It also impacted the criminal proceedings themselves. Was Wyatt going to be a witness? He was not. And was he going to testify at the trial? He was not. And our contention is that that impacted the criminal proceedings. This court in Richards talked about causation in terms of fabricated evidence and whether it impacted the conduct of the jury or something like that. In Lisker, the court recognized that fabricated evidence has an evidentiary value that impacts proceedings beyond just the trial. So, as you know, as a trial lawyer, you look at the police reports. Who's going to say what? It impacts things like cross-examination. It impacts things like plea bargaining. So if the prosecutor has reports that say X, Y, and Z, that may impact how they charge the case. So there are a lot of ways just beyond something being admitted at trial as to whether or not it could impact the criminal proceedings. And here, it's not as if Mr. McSwain's reports were, like, put away in a box. They were submitted to the prosecutor. They were used to enable the prosecution of Mr. Simmers. And so on that basis, I think causation has been met under Richards and under Caldwell.  Let me ask you this. If we, arguendo, agree with you that there's a genuine dispute of material fact as to whether McSwain fabricated Wyatt's statements, why wouldn't we remand against the other defendants? Why wouldn't we just remand this against McSwain? The others had nothing to do with this. So, well, there's two reasons, Your Honor. So I think, you know, McSwain was not involved in the interrogation. So there's the whole Fifth Amendment, all of that. But separately, as it relates to the fabrication, you are right that Mr. McSwain did write that report. It is our contention, and I think a reasonable jury could find, that there was an agreement between the officers from these two agencies to treat these two kids in this way. Well, that's your civil conspiracy concept, right? That's part of it, correct. But just taking that concept, what you seem to be arguing is that as part of preparation for trial or trying to get somebody to confess, that even talking about it is enough to have a civil conspiracy. How can that be? I don't think that's the case. You know, this is one of the most unique types of evidence I've seen in any particular case, because here they have a bunch of officers from two agencies and they talk about, in their reports themselves, literally a meeting of the minds. Who's going to do what? We're going to interrogate this person. And is that wrong? I don't think it's wrong to do that, but I do think it is when it's this. So a reasonable jury could find this in this case, that they wanted to say Simmers committed the crime despite his innocence and that they were going to use John Wyatt as a witness against him. Well, let me ask you this. Are you suggesting the police officers knew he was innocent when they were doing all this? I think that there's evidence they knew or should have knew that Simmers and Wyatt were both innocent at the time this occurred. So, for example, when they picked them up, they both described having left out of their house on Saturday night. For the civil conspiracy, is should have known enough? So the should have known relates to the element of the fabrication of evidence claim, right? So the civil conspiracy has to be in agreement to do something unlawful, right? And so I was referring to the underlying element as it relates to a way of proving fabrication circumstantially. So if they knew or should have known that they were innocent, that's a mechanism by which, under Devereux and other Ninth Circuit cases, you can show that evidence was fabricated. So part of that, as this court has recognized, is we have evidence here that says we have these two kids who we picked up for shooting flare guns and doing this other stuff. They both told us that they left their houses on Saturday night after Gochenauer was murdered. There's no – the police are the ones who brought up the Gochenauer murder. The police had the runaway reports. The kids weren't out on Friday night. So there's a lot of evidence. And then when they speak to Mr. Simmers, he's not able to tell them any nonpublic details about the crime. He's guessing about things. It's the police who brought it up. And also – So this was part of their conspiracy? That's right, Your Honor. And so it's our contention that a reasonable jury can find – and this is summary judgment. A reasonable jury could find that they – because I wanted to get to this. I think it's important. So when did their conspiracy begin? Exactly. So I think it begins when the Bothell officers arrive at the King County station. There's literally a meeting of the minds at that point. And I just want to – At that point, they decide we're going to go after this kid even though he's innocent. Correct. And they're going to do whatever they have to do. They're going to get him to confess and they're going to create evidence. Right. Go ahead.   It's our contention that's what a reasonable jury could find. And part of the mens rea, part of the circumstantial evidence, the reason that it's so much a part of our brief, is that in the days following this crime, serious crime that needed to be investigated, the police went back and were getting new information every single day about Mr. Gochenauer. What was he doing Friday night before he was killed? Well, let me ask you this. If the conspiracy theory fails, then the Coors confession can only stand against Hopkins. True? That's right. Because Mr. Rusk is deceased. Can I shift just slightly on this? If your causation argument based on Caldwell, taking that as a given, how would a Section 1983 claim against McSwain work? What would the basis for damages be? How would they be calculated? So I think that the question, one, it would go to the jury. But the question here is whether or not Mr. McSwain's actions contributed to Mr. Simmers' wrongful conviction for a murder he didn't commit. And part of the report, just I'll try to put it this way. I think that you could say Mr. Simmers might have had a criminal, his friend, John Wyatt, who was with him, as somebody who could have testified on his behalf in the case. But for the fabricated reports, he wasn't able to be an exculpatory witness for Mr. Simmers. So you're saying that basically his being falsely convicted would entirely rest on McSwain's false testimony? Is that right? I don't think it would be entirely. Under the basic law about proximate cause, there can be multiple proximate causes. And a jury would be able to decide that. So, for example, if there were a trial in this case that had just Hopkins, who is alive, and McSwain, the jury could hear from the testimony. There is joint and several liability. That's something. For those two, then, so the denial of the fair trial would be Hopkins and McSwain? Correct, Your Honor. And McSwain comes in because of what he said Wyatt told him. Correct. And because of what he said Wyatt told him, Wyatt didn't testify? Right. And what he put in his reports. And Wyatt has said what McSwain says that happened, the most important thing, I think, that— Well, who made the call not to call Wyatt as a defense witness? So Mr. Wyatt had a Fifth Amendment right to not testify himself in the criminal proceedings. His defense attorney, the state, didn't do it. And the reason why, you know, part of the reason why, and this goes back to your questions, Judge Smith, which is that those reports, his attorney is looking at them. I need to understand, why didn't Wyatt testify? He had a Fifth Amendment right not to because they threatened him with being an accomplice in the murder. Okay. And so Wyatt would have been his alibi witness? Well, Wyatt would have been an additional alibi witness, yes. Okay. You wanted to save five minutes. Yes, Your Honor. Do you want to say what you got? I was just noticing that. But, you know, this—I'll reserve my time. Very well. All right. And the county has split its time. I don't know who's going first. Ms. Magnosi, is that right? Fred Macy, Your Honor. Please. I'll go first. Thank you very much. Good morning, Your Honors. May it please the Court, I'm here today on behalf of the Bothell defendants to present to this Court. And I'm happy to accept any questions from the Court. I would like to first address the Fourth Amendment claim against my clients. The Court is well aware that when it is trying to determine if there has been a coerced confession that would violate the constitutional law, that the Court is required to look at the totality of all of the circumstances. And this includes not just the characteristics of the person who has given a confession, but it also includes the details of the interview or interrogation. And in the plaintiff's briefing, the plaintiff has made a great issue about whether or not the lower court made credibility determinations. But it's important for the Court to look at the law, which says that the Court is actually required to evaluate certain factors when making this determination as to whether there was a forced confession. So it's not a credibility determination, but the Court looks at those factors. And we know if there's a case where a juvenile has given a confession, the case law is well established. We need to give special attention to that. And there are certain factors which must be considered. And this law is well established in the U.S. v. Preston case, the Rogers v. Richmond case, and many others that were cited by all parties. Those factors include the age of the individual, the experience, education, background, intelligence, and capacity to understand and to waive constitutional rights. So in the analysis that was done by the lower court, which this Court will have to do in deciding this case, looking at Mr. Simmers' factors is part of the Court's job. Here, Mr. Simmers was 16 years old, not 12, not even 14. He was 16. He had prior convictions, prior detentions, had been returned for violations of parole to detention many times. He had a higher-than-normal IQ. He obtained his GED by the age of 16. And his mother testified, Ms. Berube, that he had left home for days at a time and was living on his own, and then he would come back. So this isn't a situation where we have a young child who had never been exposed to law enforcement, but rather someone who was in the later teens and had a lot of life experience. So those are his characteristics. And let's look at the details of the interview or interrogation with Detective Hopkins and Captain Rust. Mr. Simmers was advised of his rights over four times. He signed four rights advisements. This is a fact which is undisputed and is not given any attention or argument by the plaintiff in this case. But this is a very important factor under our well-established case law in determining, was this a coerced confession or was it a voluntary confession? He had breaks during the questioning, sometimes for quite some time, while officers were waiting for Mr. Wyatt's attorney to arrive. He was provided dinner. He was provided a blanket when he said he was cold. He was allowed to sleep. He testified the officers treated him well. And I would submit to this court that all of the cases that were cited by the plaintiff in this case were far more egregious in the circumstances and details of the interrogation than in this particular case. He said that the officers treated him respectfully. They did not raise their voices. They did not trick him. They did not make him promises. And, in fact, he got to a point where he was happy that they were recognizing him for the troublemaker he was and the gangster he wanted to be. Now, plaintiff has argued that there is some sort of a stop point for the court's consideration of the totality of the circumstances. In other words, the court can only look to the point right before Mr. Simmers testified he started wanting to please the officers and wanting to convince them that he had committed this murder. But, again, the court must follow the law, and the law says you look at the totality. At most, Mr. Simmers' argument, or the estate's argument, is that he was tired, the officers kept approaching him, he finally got worn down, and said, okay, I'll talk to you. Can I switch a little bit here? Yes, sir. I'm interested again in what I discussed with opposing counsel, and that is the role of Caldwell. They make the argument that causation can be found when the documents are included in the charging documents, but ultimately not introduced at trial. What's the State's position on that, or the county? Thank you, Your Honor. Yes, it's interesting. Our factual circumstances are different than what existed in Caldwell. Here, the court had a three-day full suppression hearing where multiple witnesses were called to testify. And, again, the other issue that has kind of been eliminated by the estate not pursuing additional claims, which is the issue of probable cause, those documents certainly gave probable cause, which was supported, and so the fact that they were, even if they were filed in the court file or provided to the prosecutor, it doesn't change the other facts. And I see my time is almost up. I would like to point out something here that's really important. The information from Mr. Detective McSwain was still important with regard to one aspect that Mr. Wyatt admitted even in his 2018 interview, which is, yes, I told the detectives that Mr. Simmers took a knife from my cabana. His description of that knife exactly matched the murder weapon. That information alone is what started Detective Hopkins from saying, wow, how did he know the knife looked like that? Mr. Simmers testified at deposition in 2022. Yes, I took the knife. Well, let me ask you a question about the coerced confession. Plaintiffs have evidence that they want to present that he was innocent. How does that play into the fact that they're also alleging a coerced confession? Because if he was innocent, he confessed for some reason. Thank you, Your Honor. Actually, this court is instructed by the U.S. Supreme Court and by prior Ninth Circuit cases that his innocence is not a question to be determined by the court. And you can find that in the Rogers v. Richmond U.S. Supreme Court case. The focus here is on what did the officer do? And it's well recognized that suspects, for whatever reason, there's a number of reasons, can give false confessions. They can have other motivations, whether they're covering for someone else, whether they're trying to establish a gangster reputation and want to beat a murder rap. They can have reasons. So the court is not to look at was he innocent or not. The court is to look at what was the conduct of the officers. And here we just do not see the type of coercive, abusive, extended conduct that you see in the cases that were cited by the plaintiff. Your time is up, but I have one quick question. Given the overwhelming evidence that was used to originally convict Mr. Simmers, why did the county ultimately say, we're not going to retry him? What was the basis for that? I will let the court know I don't represent the county, but I have read the county's briefing on that. And the reason is that he had already spent 23 years in prison, and a number of the key witnesses, including Detective Rusk, had passed away.  Thank you, Your Honor. Dead men tell no tales, right? That's right, Your Honor. Okay. Thank you very much. I appreciate the court's attention. Okay, thank you. So, Mr. Townsend, then. May it please the Court. Good morning, Your Honors. Jesse Townsend for the King County Appellees. That's the county itself and then Major McSwain. We join in the Bothell Appellees' argument that the confession of Mr. Simmers was voluntary under the totality of the circumstances test. So if I can, I'd like to focus on some of the questions the panel asked concerning the fabrication of evidence theory concerning Major McSwain. And obviously, as we briefed, we think there's no admissible evidence that supports that theory, because evidence must be capable of being submitted in an admissible form at trial to raise a genuine issue of fact at summary judgment. And it's the burden of the proponent of the evidence to show that this evidence would be admissible at trial. And here, the State is relying entirely on a hearsay interview that Mr. Wyatt gave many years later, and they've made no showing that it actually will be admissible at trial, among other things. Well, isn't Wyatt available to testify? We have no evidence in the record about that, Your Honor. We have, you know, the Estate's assertion, but no showing that that's the case. And they did not attempt to depose him, or at least there's no subpoena in the records showing that they attempted to depose him, and no explanation as to why they didn't do that, nor is there any other showing such as that they communicated with Mr. Wyatt or that he agreed to testify. As counsel for the Estate noted, he took the Fifth Amendment all those years ago, and there's no — nothing in the record to indicate that he wouldn't do the same thing. Hasn't he given a statement, though? He gave an interview in 2017, before the litigation was filed. That interview was unsworn. It was when the State Attorney General's Office and the county were investigating whether to agree to the motion to vacate the conviction or not. But it's not a sworn statement in this litigation. Counsel, was qualified immunity ever rated by anybody here? It was briefed below, Your Honor. When? I believe it was briefed in summary judgment. I know that this Court has been fairly restrictive on qualified immunity when it comes to fabrication claims, which is why it was not featured in our appellate briefing. Can it play a role? I mean, in other words, could you be raising it sua sponte at this late date? I don't — I mean, to be frankly, I don't believe we can raise it sua sponte at oral argument. So for our purposes, we should put qualified immunity out of our consideration? I believe that is correct at this appellate stage. I'm not — I'm not going to concede that it was waived if the case goes below, but — but the Court doesn't need to get there, because aside from the admissibility issue, which is the evidence of actual fabrication, there's no evidence of causation. And I want to address Caldwell. Judge Smith, you raised it. This Court in Caldwell said that the plaintiff has to come forward with a showing that the fabrication caused him some harm, specifically that the deliberate fabrication caused the — caused the plaintiff's deprivation of liberty. And the estate doesn't have evidence to show that, because the timeline is the same day that Major McSwain allegedly fabricated the statements by Mr. Wyatt, Mr. Simmers confessed. And two days later, before Mr. Simmers was charged, Mr. Wyatt's counsel and Mr. Wyatt himself told the officers that he would not be a witness, that he was going to not cooperate with the prosecution. So when the charging document was filed, the prosecution already knew that Mr. Wyatt was not available and that this was not going to be a source of additional information. And then beyond that, Your Honors, not only did Mr. Wyatt not testify at trial, to answer your question, Judge Reyes, as the estates noted, he invoked his Fifth Amendment right, but Major McSwain also didn't testify. And the parties and the court all agreed that — that no one would reference Mr. Wyatt's statements or the reaction as described by Major McSwain. So to use the other case from this court, the Richards v. County of San Bernardino case, there's no chance that the jury's deliberation was affected by this alleged fabrication. The theory that the estate's advancing now, which is that somehow the — the existence of this alleged fabrication is what caused Mr. Wyatt to invoke his Fifth Amendment right, has no evidentiary support. I've seen nothing in the record to suggest that it's because of this existence — this alleged report that — that Mr. Wyatt invoked his Fifth Amendment right. He's described as — as a witness, not as an accomplice or a suspect, as I understand it, in the — in those reports. The other thing I would just point out, Your Honor — Your Honors, in response to, I think, Judge Reyes's question, the estate indicated that the conspiracy started when the Bothell officers arrived at the King County precinct where the two juveniles were being held. But the alleged fabrication, according to the estate's own theory, would have already happened. That is to say, for some reason before this conspiracy, for an unknown reason, Major McSwain had decided to fabricate this conversation, even though it wasn't his crime to investigate and there was no evidence that he had any nonpublic information about that crime. Is it the county's position that the conspiracy and Monell claims are derivative claims? Yes, Your Honor. Which is not an earlier finding of violation, constitutional violation, you ever get to them? And that also applies to the failure to intervene claim, which the estate also has. So for all those cases, for all those claims, if there's no constitutional violation, be it coerced confession or fabrication theory, those claims fail at that stage. Even if not, the Monell claim, of course, fails for additional reasons, which is the estate didn't offer evidence of a prior pattern. And this Court has required that sort of evidence in, for example, the Studeby City of Everett case, which is — which the estate does not try to distinguish. And the estate — it's not disputed that the estate doesn't have a prior pattern of evidence. So that's an additional reason why the Monell claim fails. And then the conspiracy claim, there's no evidence of an agreement. All that they — all the estate has is an evidence of meetings. But that's insufficient to reasonably infer that at those meetings, officers from two different agencies, one of which was not in charge of solving this murder, decided, seemingly arbitrarily, to pin it all on these two — on this one juvenile. It seems that that claim would pretty much damn any police investigation, because all you'd have to say is, got a bunch of us to get together and talk about a case. End of story. Well, it would damn any investigation, Your Honor, where officers talked to other agencies, cooperated, and then documented in their cooperation — in their notes that, yes, they communicated with other agencies. That would be a conspiracy under the plaintiff's position. Correct. That sort of evidence would then automatically be turned into a conspiracy, which then can be used to broaden the pool of defendants for any sort of underlying violation. And then the same, again, is true of the failure to intervene claim, where it's just not reasonable — there's just no evidence to build a reasonable inference that any of the King County officers, specifically Major McSwain, knew that anyone's rights were being violated, such that he would then have had the opportunity to intervene, which is, of course, required for the failure to intervene claim. And if Your Honors have no further questions — No further questions? I think not. I ask that you all affirm. Thank you. Thank you so much. All right. Mr. Owens, you have some rebuttal time. Thank you, Your Honors. This is a summary judgment posture. The question is what a reasonable jury can find. And when it comes to credibility, Mr. Simmers gave an account of the interrogation. In his own words, he said, I didn't want to talk to the police. They wouldn't acknowledge or respect my right to silence. They pressured me to talk to them. That's his words. As a juvenile, you have to construe the facts and make inferences from them in the light most favorable to the plaintiff. And what the Bothell argument presented to you is construe the facts in our favor. Mr. Simmers' age essentially doesn't matter because he had been previously arrested. But the Supreme Court has said it doesn't matter the sophistication of the juvenile. He's still 16. You still have to consider that in his favor. When it also— Let me just ask you a question. Without the conspiracy for the denial of the fair trial theory, all you have left are Hopkins and McSwain, right? I think that's true regardless of the conspiracy. And then the failure to intervene, you have four officers, Schlegel, Hopkins, Meyer, and McSwain? No. So I'm sorry. I misunderstood the prior question, Your Honor. It would be all four. And I'll jump to this. So as it relates to the conspiracy, and I want to provide an answer to this, Judge Smith, our claim is not that every single time police get together and talk and work together that there's a civil conspiracy that's actionable under the law. That is absolutely not our claim. However, when subsequent to that there are fabricated police reports that result in the wrongful conviction of a teenager for a murder they didn't commit based upon information in those reports that's untrue, that's the thing that creates liability is what were they agreeing to in that conversation. So it is certainly not going to be the case that standard police work is going to be implicated by our theory because, as the Court mentioned, it's a derivative theory. You have to find an underlying constitutional violation. And in this case, you think the causation through Caldwell is your answer, right? Part of the answer, that's right. And what Caldwell talks about is evidence in the prosecutor's file can impact a criminal proceedings. This Court said that again in LISCR, which is 780 F. 3rd. 1237, about the impact of fabricated evidence and police reports beyond use at trial. As I understand it, your argument is that it's the fact that it was referred to in the indictment, not that it was introduced into trial, right? It wasn't introduced at trial, correct. And police reports are basically never introduced in criminal proceedings, right? That's why they don't have to be introduced to impact a criminal proceeding. So we've come up with a number of ways in which their very existence in a file could impact the way in which, you know, the criminal defense attorney, the prosecutor, and other folks act during those criminal proceedings. And I do want to address the point, which is that the evidence at trial, you know, confessions are a big deal if somebody confesses to a crime. And, you know, there wasn't overwhelming evidence of Mr. Simmers' guilt outside of that. And so and post-conviction, there was additional DNA testing done on the murder weapon itself that wasn't Mr. Simmers. The Court looked at the juvenile brain science that we, you know, you saw in Miller against Alabama, all of those cases. That's what was presented. But it doesn't matter what the county's rationale was for dismissing the charges or not. That's not part of the proof. But there was proof of Mr. Simmers' innocence. This is summary judgment. Mr. Simmers said he's, I am innocent. That must be credited at this juncture. Inferences from that fact must be credited at this juncture. It may be for a jury to decide and work out things like a quintessential question of causation. That's a quintessential jury question. Well, you know, that's kind of the problem with your case in presenting it to a jury. You've got a lot of different theories, a lot of different theories of causation. And I credit what you said in your prior, in your opening, that certainly you can have different theories of proximate causation. But at least in my experience, it's pretty tough for a jury to wait. It's all sometimes self-defeating. So my question to you is what's your best theory? I think our best theory is that Hopkins and McSwain work together. There's two juveniles, one Simmers, one is Wyatt. They split them up. The goal was to get a conviction of Mr. Simmers via a false confession. And that's what they obtained from him. They didn't get Wyatt to comply with that. And that's what set this whole ball in motion. And part of that also involves them disregarding the evidence of Fred, the motorcycle outlaw gangs, all of the people who saw, who interacted with the victim the night before. And that's why these police were working together. And that they continued when they wrote their reports six days later, weeks later, that they were continuing to work in advance of that goal. And so that would be the theory.  Thank you very much, all counsel, for your argument. The case of a State of Ian Simmers v. County of King et al. is submitted.
judges: THOMAS, SMITH, Rayes